In re James D. **KREIDLE**, Debtor.

James D. **KREIDLE**, Plaintiff,

v.

**DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE,** Defendant.

Bankruptcy No. 86 B 05540 M.
Adv. No. 90–1579 PAC.

United States Bankruptcy Court, D. Colorado.

July 8, 1991.

Harry M. Sterling, Gelt, Fleishman & Sterling, P.C., Denver, Colo., for plaintiff.

Mark E. Nebergall, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND ORDER

KAREN M. SEE, Bankruptcy Judge.

I. *Background and Chapter 11 proceedings*

Mr. James D. Kreidle was a 50% partner in a general partnership known as Titsch & Associates. He also was an officer and director of several related corporations, for which he guaranteed a substantial amount of debt. As a result of the guarantees and the partnership debt, Mr. Kreidle found himself personally liable for over $8,000,-000 of debt in 1986.

On June 20, 1986, an involuntary petition was filed by three petitioning creditors connected with that debt against James D. Kreidle under 11 U.S.C. ("Bankruptcy Code") § 303(b) requesting an Order for Relief be entered pursuant to chapter 7 of the Bankruptcy Code. Mr. Kreidle filed his answer to the petition on July 10, 1986, denying the allegations in the petition, and a hearing was set for September 26, 1986.

On the date that the hearing was set, counsel for the petitioning creditors and for the alleged Debtor, Plaintiff in this action, stipulated that an Order for Relief under *chapter 11* of the Bankruptcy Code would be entered by the Court. For unexplained reasons, an Order for Relief was inadvertently entered on October 2, 1986 under *chapter 7*, rather than *chapter 11*. Debtor's counsel moved to have the Court reconsider its Order of October 2 to reflect the stipulation of the parties, but no action was taken by the Court on this Motion. Finally, on November 25, 1986, an Order was entered by the Court on a separate Motion filed by the Debtor under Bankruptcy Code § 706(a) to convert the case from a case under chapter 7 to a case under chapter 11.

On January 15, 1987, Debtor and his spouse deposited an election to terminate their 1986 calendar tax year on October 1, 1986, under § 1398 of the Internal Revenue Code of 1986, as amended (the "Tax Code") and a request for an extension to file the short year tax return for the year ending October 1, 1986 in the United States mail, certified mail return receipt requested, addressed to the Internal Revenue Service ("IRS") Service Center in Ogden, Utah. The IRS received this election and extension several days later. About the time that the election was mailed, the accountant for Debtor called Kathy Meyer, an employee of the IRS Special Procedures Section who was given responsibility for IRS participation in bankruptcy proceedings in Colorado, to discuss the place for filing of the 1986 returns when completed. Ms. Meyer asked to have the first short year return ending October 1, 1986 mailed to her, and said she would then forward it to Ogden.

There was continued monitoring by the IRS during 1987 of the Debtor's estate and of taxes due. July 10, 1987 was set by an Order of the Bankruptcy Court as the last day for filing claims in the reorganization proceeding. A notice of this bar date was received by the IRS about June 25, 1987. Although the IRS did not file a proof of claim, a creditor of Mr. Kreidle filed a proof of claim on behalf of the IRS pursuant to Rule 3005, Rules of Bankruptcy Procedure, before the bar date. This claim was in an unknown amount for FICA, Federal Withholding Taxes, "and/or other taxes in an undetermined amount." A notice of the filing of the proof of claim was received by the IRS on or about July 21, 1987, with a notice that the IRS could amend their proof of claim if the IRS so desired.

The Debtor filed his First Amended Plan of Reorganization ("Plan") on September 11, 1987. Class 2 of the Plan was defined as "Claims entitled to priority under § 507(a)(7) of the Code, being personal income taxes for the tax year 1986". Class 2 was unimpaired, and was entitled to the following treatment:

> Class 2 claimants shall receive on account of their claims, cash from the Initial Cash Payment equal to the allowed amount of such claim within thirty (30) days of the Effective Date of the Plan if not paid or satisfied prior thereto except to the extent such claimants may agree otherwise....

Article 7 of the Plan provided that the Bankruptcy Court would retain jurisdiction after confirmation to determine objections regarding creditors' claims.

The Debtor filed its Second Amended Disclosure Statement ("Disclosure Statement") pursuant to § 1125 of the Bankruptcy Code on September 11, 1987. The Disclosure Statement provided, in part, that the Debtor would pay $203,518.00 (regular tax liability) in estimated unpaid 1986 taxes. Subsequent to the filing of the Disclosure Statement, the Statement was found adequate by order of this Court and duly transmitted to the creditors (including

the IRS) in conjunction with Debtor's Plan. On October 9, 1987 Defendants received Debtor's Plan and Disclosure Statement together with a notice requiring the IRS to file any objections it may have had with the Bankruptcy Court to any Disclosure Statement information. No such objections were filed.

The Disclosure Statement was approved by the Bankruptcy Court on September 14, 1987, in an order which set November 13, 1987 as the last day for filing objections to the Plan. The Disclosure Statement was mailed to the IRS shortly thereafter together with the Plan, a ballot for approval or rejection of the Plan, and a Notice that November 13, 1987 was the last day on which objections to the Plan could be filed and served on Debtor's counsel. This material was received by the IRS on October 9, 1987, but no ballot or objection to the Plan was filed by the IRS. On November 6, 1987, the proof of claim filed on behalf of the IRS by another creditor, for an unknown amount, was amended by the IRS to include claims for the Tax Code § 6672 100% penalty imposed on responsible persons when withholding taxes are not paid by corporations. This revised proof of claim related to unpaid trust fund taxes of five separate corporations whose business was related to business conducted by Titsch & Associates. The total claimed amount due was $293,966.05. This amended proof of claim was subsequently paid by the Titsch & Associates bankruptcy estate after confirmation of Kreidle's Plan. Prior to such payment, the IRS agreed to withdraw its claims in the Kreidle estate if the tax specified in the amended proof of claim, $293,966.05, was otherwise paid. On November 16, 1987 the Court entered its Order confirming the Debtor's First Amended Plan of Reorganization.

Under the Plan, Mr. Kreidle agreed to pay his unsecured creditors $2,600,000 over a period of time not to exceed seven years. $1,000,000 was due and paid by March 31, 1988, and the balance was due in quarterly payments of interest at the rate of 10% per year and annual principal payments of at least 10% of the then outstanding balance in five of the seven years of the plan.

Payments were current until the interest payment due in December, 1990. These substantial payments were made, in part, from transfers made by Debtor's spouse from her own assets, and from Debtor's earnings and the sale of Debtor's assets. On October 5, 1990, the IRS issued its Statutory Notice of Deficiency claiming an amount of additional federal income tax which, together with interest and penalty, totalled approximately $1,510,964. The December 1990 plan payment was withheld.

Among the claims paid as part of the Plan payments was all of the unpaid federal income tax liability of Debtor as shown on the October 1, 1986 short year return pursuant to the Class 2 claim of the IRS in the confirmed Plan. It was admitted in the pleadings by the IRS that the Debtor and the Debtor's Plan creditors would be economically injured as a result of allowing the IRS to collect a claim in excess of $1,500,000 at this late stage of the Debtor's rehabilitation process.

## II. Debtor's Tax Returns and IRS Notice of Deficiency

Pursuant to the election under Tax Code § 1398(d)(2) ("§ 1398 election"), the Debtor and his spouse filed their joint tax returns for the first short year period of January 1 through October 1, 1986 showing taxes due of $384,194 (tax liability as increased by alternative minimum tax) and taxes withheld of $217,919. Accordingly, the amount of $166,275 was paid by Debtor and his spouse with the return. At the same time, the Debtor and his spouse filed their joint return for the second short tax period of October 2 through December 31, 1986 showing tax due in the amount of $2,513 and said amount was paid by the Debtor and his spouse simultaneously with submission of the tax return. Plaintiff and his spouse filed a joint tax return for taxable calendar year ending December 31, 1987 on or about October 15, 1988 claiming a charitable contribution deduction carried over from Debtor's estate in the amount of $41,-135.

Early in 1990, a taxpayer compliance measurement program ("TCMP") audit be-

gan of the 1988 tax return of the Debtor and his spouse. In the course of the audit, the examiner decided to review the 1986 and 1987 years to determine if there was any additional tax liability. At that time, the statute of limitations had not run, and these years were still open for examination.

On October 5, 1990 the IRS mailed a Statutory Notice of Tax Deficiency to Kreidle and his spouse claiming taxes in excess of amounts previously paid before or with the original return less refunds received. The additional taxes, penalties and interest are summarized as follows:

|  | Income Tax Deficiency Claimed | § 6661 Penalty Claimed | Interest (Approx. 11/30/90) | Total |
|---|---|---|---|---|
| 1986 Tax Year | $808,595 | $202,149 | $477,997 | $1,488,741 |
| 1987 Tax Year | $ 13,320 | $ 3,320 | $ 5,583 | $ 22,223 |
|  |  |  | GRAND TOTAL | $1,510,964 |

The deficiency claimed in 1986 was based on an allegedly late filing of the § 1398 election. This filing is required to be made on or before the 15th day of the fourth month after the month on which the bankruptcy case commences. IRS Regulation § 7.a.2(d). If the case "commenced" by the filing of the involuntary petition on June 20, 1986, as alleged by the IRS, the § 1398 election had to be filed by October 15, 1986. If the case "commenced" upon the entry of the Order for Relief on October 2, 1986, the § 1398 election had to be filed by February 15, 1987. The § 1398 election was filed on January 15, 1987. A timely filing of the election divides the tax year of the individual debtor (and in the case of a joint return, the debtor's spouse, as well) into two tax years. The first tax year ends the day before the bankruptcy case commences, and the second tax year runs from the date of the commencement of the case until the normal ending date of the taxpayers' taxable year, in this case, December 31. Section 1398(d)(3) of the Tax Code provides that "the term 'commencement date' means the day on which the case under Title 11 of the United States Code to which this Section applies commences."

The effect, in this case, of a disallowance of the § 1398 election allegedly would have increased the taxable income of the Debtor for 1986 because the net operating loss carryovers and other favorable tax attributes of the Debtor claimed in his return, for the first short tax year of 1986, would have flowed into the Debtor's estate and would not be available to offset significant income earned by the Debtor during the period January 1, 1986 through October 1, 1986. The IRS further claimed that these favorable tax attributes were used up pursuant to Tax Code § 108(b), by the Debtor's estate, a separate taxpayer created under Tax Code § 1398, due to an alleged $5,331,699 of cancellation of indebtedness income which occurred upon confirmation of Debtor's Plan. Thus argued the IRS, the favorable tax attributes, having been used in this manner, did not flow out to Kreidle pursuant to Tax Code § 1398(i) and were not available to him to carryback and offset the alleged increase in 1986 income tax.

The basis for the deficiency in 1987 was a disallowance of the charitable contributions carryover deduction claimed by the Debtor of $41,135. IRS initially contended that this deduction was also used up by the Debtor's estate and was not available to be used by the Debtor on his joint 1987 calendar year federal income tax return.

III. *Debtor's and his Spouse's Complaint for Determination of Tax Liability*

On December 7, 1990, the Debtor filed his Complaint for Determination of Tax Liability and for Equitable, Injunctive and Declaratory Relief regarding Determination of Tax Liability. Jurisdiction was claimed under Bankruptcy Code § 505 and

28 U.S.C. § 1334 to enable the Court to determine the correct federal income tax liability owed by the Debtor for 1986 and 1987. The Complaint requested the Court to (a) determine the tax liability of the Debtor for the two short tax years ending October 1, 1986 and December 31, 1986 created by the § 1398 election and for the tax year ending December 31, 1987, (b) determine that the Debtor and his spouse made a request under Bankruptcy Code § 505(b) for an accelerated determination of taxes due for 1986 and 1987 which the IRS did not complete in proper time, thereby making the returns final as filed, and (c) determine that the IRS is equitably estopped from claiming any additional tax for 1986 and 1987 because of their actions relating to the Debtor and his Plan. Plaintiff's claim that the IRS had failed to make a timely determination under Bankruptcy Code § 505(b) was withdrawn and not pursued.

The Debtor and his spouse each also filed a petition with the United States Tax Court for a redetermination of the liability deficiencies claimed by the IRS within ninety (90) days from the issuance of the Statutory Notice of Deficiency. The Tax Court petitions were filed after the Complaint in this Court, and have not been heard or determined prior to the hearing on Plaintiff's Complaint herein.

## IV. *Issues Remaining for Trial*

Plaintiff and Defendant prepared a joint pretrial statement which stipulated that certain legal and factual issues were to be determined by the Court. The Court addressed the following issues in order to be able to compute the federal income tax liability for the applicable years:

A. Does the Court have jurisdiction to determine the amount of taxes due by Debtor for 1986 and 1987, given the confirmation of the plan of the Debtor?

B. Did Debtor make a timely § 1398 election to terminate Debtor's tax year?

C. If Debtor did not make a timely § 1398 election, was the IRS equitably estopped from asserting or collecting any deficiency resulting from the failure to make

such an election by reason of the Debtor's and others' justifiable reliance to their detriment on the actions and statements of the IRS and its employees acting within the scope of their authority?

D. Based upon the Court's Findings of Fact and Conclusions of Law on the above issues, what is the Debtor's correct federal income tax liability for 1986 and 1987? This issue requires the Court to determine these additional issues:

1. What is the amount of the cancellation of indebtedness income resulting from the discharge of debt by reason of the confirmation of the Debtor's Plan under Chapter 11 of the Bankruptcy Code in 1987?

2. What is the character of Debtor's loss from the worthlessness in 1987 of Debtor's interest in the general partnership, Titsch & Associates, i.e., is the loss a capital loss or is the loss an ordinary loss?

3. What is the amount of net operating loss that the Debtor or the Debtor's estate may carryback to apply against the 1986 income tax liability?

4. What are the amounts of Debtor's charitable contributions and investment tax credit carryforwards available to Debtor in 1987?

E. If there were substantial understatements of income for any year, was the IRS justified in assessing a penalty under Tax Code § 6661 (now repealed, but in effect in 1986)?

## V. *Findings and Conclusions*

### A. *Jurisdiction.*

■ Under Bankruptcy Code § 505(a)(1), the Court may determine the amount or legality of any tax, any fine, or any penalty relating to a tax, or any addition to tax, whether or not previously assessed, and whether or not paid, unless these determinations were contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under Title 11. It was stipulated by the parties that the amount or legality of the tax, interest, fine,

penalty or addition to tax claimed by the IRS pursuant to its Notice of Deficiency issued October 5, 1990, was not contested by a judicial or administrative tribunal of competent jurisdiction before commencement of the case under Title 11. Thus, the Court has jurisdiction to determine the amount of the tax liability of the Debtor and the Debtor's estate for the years 1986 and 1987 and the legal and equitable issues raised by the pleadings.

■ Under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(o) this action is a core proceeding. It is the allowance or disallowance of a claim against the estate or a proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor/creditor relationship.

B. *Did Debtor make a timely election to terminate Debtor's tax year when the case "commenced" pursuant to Tax Code § 1398(d)?*

■ The Court concludes that the Debtor made a timely § 1398 election to close his and his spouse's taxable year by filing such election with the IRS on or about January 15, 1987. A Debtor may elect to treat his taxable year which includes the bankruptcy "commencement date" as two taxable years; the first of which ends on the day before the "commencement date" and the second of which begins on the "commencement date". Tax Code § 1398(d)(2)(A). The term "commencement date" means the day on which the case under Title 11 of the United States Code to which this section applies commences. Tax Code § 1398(d)(3).

The Court concludes for the reasons set forth herein that an involuntary case commences for purposes of Tax Code § 1398 upon entry of an Order for Relief, and not by the filing of a petition under Bankruptcy Code § 303(b). Although § 303 of the Bankruptcy Code provides that an involuntary case is commenced by the filing with the Bankruptcy Court of a petition, this rule does not apply for all purposes. The Court in *In Re Alpine Lumber and Nursery*, 13 B.R. 977, 979 (1981) analyzed the issue as follows:

Under 11 U.S.C., § 303 an involuntary case may be commenced under Chapter 7 or 11. *This involuntary case does not become a case under Chapter 7 or Chapter 11 until the Order for Relief is entered.* The rationale for this Rule lies in the very nature of an involuntary case. An involuntary case is in essence a civil suit requesting a judgment that an Order for Relief be entered based upon the provisions of § 303(h)(1) and (2). This conclusion is supported by the requirement that an involuntary petition must be served on the Debtor along with a summons. Bankruptcy Rule of Procedure 111. Additionally, until an Order for Relief is entered in the case, the Debtor may continue to use, acquire or dispose of property as if the involuntary case had not been commenced. 11 U.S.C. § 303(f). (emphasis added)

In determining the appropriate commencement dates for tax purposes, Bankruptcy Code, Special Tax Provisions, offers an insight into resolution of the issue. Bankruptcy Code § 346 was an extensive effort by the House Committee on the Judiciary at the time of the Bankruptcy Reform Act of 1978 to resolve many unanswered questions regarding the relationship between the Tax Code and the Bankruptcy Code. As a last minute compromise in the legislative negotiating process, the application of § 346 was restricted to state and local tax law, with the anticipation that Congress would pass a similar bankruptcy tax bill in the immediate future. In fact, on December 24, 1980, Congress did pass the Bankruptcy Tax Act of 1980 which enacted Tax Code § 1398. The definition of "commencement" for purposes of the Tax Code is left to the Bankruptcy Code, and not necessarily only to § 303(b) of the Bankruptcy Code. Tax Code § 1398(d)(3).

The provisions of Bankruptcy Code § 346 substantially parallel the modifications to Tax Code § 108 (Cancellation of Debt Income) and Tax Code § 1398. Tax Code § 1398(j)(2)(A) provides that the bankruptcy estate may carryback any net operating losses to Debtor's taxable years before the estate's first taxable year. Section 346(i)(3)

of the Bankruptcy Code, in a parallel provision, provides that the estate may carryback any loss of the estate to a taxable period of the Debtor that ended before the *Order for Relief* under such chapter.... While the Tax Code speaks of the "estate's first taxable year", § 346 of the Bankruptcy Code refers to the entry of the Order for Relief as the start of the tax year. Accordingly, Bankruptcy Code § 346 indicates that for state and local taxes, the date of entry of Order for Relief commences the case. The Court does not believe there is any reason shown in the cases or legislative history why the commencement of the case for purposes of the § 1398 election regarding federal taxes should be different.

There are several sound policy reasons why the case should commence for purposes of the § 1398 election on the date of the entry of the Order for Relief, rather than on the date of the filing of the petition. It may be some time after the filing of the involuntary petition that the debtor is served with the petition and with the summons. During that time, the debtor may not even know that an involuntary case has been filed, and that a deadline is running which may significantly affect his substantive rights to make the § 1398 election. Further, during the time before the Order for Relief is entered, especially if the petition is contested, the circumstances of the debtor may be unsettled and in disarray making it difficult or impossible for the debtor to determine whether or not to make the election. By affording debtors the right to an election, Congress obviously recognized and intended that debtors would select the option which best minimized their tax liability. This policy furthers Congressional intent to afford debtors a new start.

The § 1398 election is not revocable by the debtor in a Chapter 11 case, and such debtor may not know what the future holds. The debtor simply is not in a position to make a considered binding election at the time of the filing of an involuntary petition. There is a potential future estate, or a potential future bankruptcy, or, on the other hand, there may be a dismissal of the involuntary petition, or a workout with all the creditors. How to treat the tax attributes of the estate is probably one of the most, or the most important, decisions in the case. To require a premature decision which may later have a tremendous effect on the rights of creditors is not equitable to those creditors which probably don't even have notice of the case, for it may take some time in large cases to even prepare the list of creditors. Furthermore, other subsections of § 303 of the Bankruptcy Code such as § 303(f), (g) and (h) are consistent with the interpretations that the commencement of the bankruptcy case does not begin until entry of the Order for Relief for some purposes.

C. *If Debtor did not make a timely § 1398 election, was the IRS equitably estopped from asserting or collecting any deficiency resulting from the failure to make such an election by reason of the Debtor's, his spouse's, and his creditors' justifiable reliance to their detriment on the actions and statements of the IRS and its employees acting within the scope of their authority?*

■ Even if the election under the Tax Code was not timely, the Court concludes the IRS should be estopped from assessing or collecting the alleged 1986 deficiency. From the very first month of the IRS involvement with Debtor, the IRS was made aware that Debtor had executed and filed a § 1398 election to terminate his taxable year. The Debtor's 1986 first short year return stated on the top righthand corner of the first page that it was being filed pursuant to a "§ 1398(d)(2) election" and contained a 3 page statement attached to the return setting forth the election and the breakdown between the two individual returns for 1986 and the estate return for 1986. The same items appeared on Debtor's second short year 1986 return (10/2/86–12/31/86) and Debtor's Estate's 1986 return (10/2/86–12/31/86). The IRS was also aware of the involuntary petition filing date since the IRS has admitted receipt of Debtor's Disclosure Statement, the first sentence of which states, "On June 20, 1986 an involuntary Chapter 7 bankruptcy petition was filed against the Debtor in the

United States Bankruptcy Court for the District of Colorado."

Debtor's representatives had several conversations with and letters to IRS employees relative to Debtor's taxes. The IRS had correspondence with Debtor's representatives and with counsel for Debtor's Creditor's Committee on the same subject. Prior to the confirmation hearing in October, 1987, Debtor's counsel specifically asked Don Jenkins, an employee of the IRS in the Special Procedures Section, about the status of the 1986 tax return. This question was in response to a request for a copy of the tax return by Mr. Jenkins. This request by Mr. Jenkins, the other contacts, IRS records, and testimony of Kathy Meyer, the IRS bankruptcy specialist (who has a law degree) in charge of monitoring Debtor's case from beginning to end makes it clear that the IRS was involved generally throughout this case. The IRS knew, or reasonably should have known, about the income tax issues, and assumed responsibility for being involved with all types of tax issues.

Furthermore, the IRS was actively involved in analysis, research, telephone conversations, meetings and correspondence regarding Debtor's potential tax liability. These efforts resulted in the IRS filing of an Amended Proof of Claim against Debtor claiming 100% penalty tax liability for unpaid withholding by other companies, in which Debtor had indirect ownership interests, ten (10) days prior to confirmation of the Plan. The IRS never raised any issues relating to additional income tax liability of Debtor nor did IRS request an audit. The IRS failed to object to the Debtor's Second Amended Disclosure Statement and Debtor's First Amended Plan. In fact, for almost three years after the Debtor's tax return was filed, the IRS did nothing although it was aware that a reorganization plan had been confirmed and the Debtor and others were, on a daily basis, changing their economic positions in reliance on the Plan.

Debtor, his wife, and his creditors justifiably relied on the actions and statements of the IRS in believing that the § 1398 election was valid and no further income tax was due. Substantial payments have been made by Debtor under the terms of his Plan of over $1,600,000. Debtor had made the § 1398 election acting on the analysis and advice of certified public accountants and counsel in an area of the law where there is no authoritative precedent determinative of the issue as to when the § 1398 election should be made in an involuntary bankruptcy proceeding. Debtor, his wife, and his creditors continuously relied from the time of confirmation of the Plan on the IRS's determination of the tax liability as set forth in its Amended Proof of Claim showing only 100% penalty taxes which were expected to be paid by the Titsch & Associates' Bankruptcy Estate. The amounts claimed in the Amended Proof of Claim were, in fact, later paid by the Titsch & Associates Bankruptcy Estate shortly after confirmation of his Plan. Debtor paid all of the other taxes due. The IRS stated several times to counsel for the Creditor's Committee after confirmation of the Plan that upon payment of the Amended Proof of Claim amount, the IRS would release all claims against Debtor's estate.

Other bankruptcy courts have addressed similar issues with regard to application of estoppel against the IRS. In the case of *Aristo Foods, Inc. vs. U.S. Internal Revenue Service*, 41 AFTR2d 78–432 (D.C.West. Dist.MO.1977), 77–2 USTC, ¶ 9731 *aff'd* by an unpublished opinion 582 F.2d 1288 (8th Cir. September 1, 1978), the facts, which are similar to the instant case, are as follows:

Simply stated, the plaintiff-debtor filed its petition in bankruptcy on September 29, 1973 seeking relief under Chapter 11 of the Bankruptcy Act. After two years of meetings, conferences, negotiations and court proceedings, a plan of arrangement was formulated and presented to the Bankruptcy Court for confirmation. Throughout this time period, the parties operated under the assumption that the claim by the IRS would be roughly $120,-000 as estimated by the IRS and its representatives. The complex arrangement was confirmed by the court on August 29, 1975. On September 18, 1975, the

IRS filed its 'Corrected Proof of Claim' for taxes due from the corporate debtor. The total amount of the claim formed a total of $119,124.18. Five months later the IRS for the first time revealed its intentions to claim $39,322.09 constituting penalties and interest. No part of this assessed sum was claimed by the IRS in the Chapter 11 proceeding, and at no time was notice given of the intention of the government to seek these additional sums.

The Court found that "under the circumstances here present, the government has by its actions (a) mislead the parties to their detriment ..., (b) or has waived such claim, or (c) has accepted the amount received as payment in full." The Court stated:

> that the government's position taken with its admitted silence as to its intentions, poses enormous problems for administration of the Bankruptcy Court's end of debtor's estate, especially in rehabilitative proceedings such as Chapter 10 and Chapter 11 cases. By allowing the IRS to remain silent as to its intentions of later assessing penalties and post-petition interest, the Debtor, creditors, persons financing the Plan, and the Court itself will not know the true situation as to Debtor's financial position and the feasibility of its continuing as an ongoing concern. It would require the Bankruptcy Court to divine the secret intentions of the IRS before confirming the Plan of arrangement.

Although most courts' list of factors are similar, the most closely applicable ones to be used by the Court should be those used by other courts in determining bankruptcy tax proceedings. In the case of *In Re La Difference Restaurant, Inc.*, 63 B.R. 819, 826, 58 AFTR.2d, 86–5554, 86–5558 (S.D.N.Y.1986), the court set forth the factors as follows:

> (1) A misrepresentation by an agent of the United States acting within the apparent scope of his duties; (2) The absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; (3) Actual reliance; (4) Detriment; and (5) A factual context in which the absence of equitable relief would be unconscionable.

The position taken by the IRS is that Debtor must show affirmative misconduct by the government or its agents as an element of equitable estoppel, citing *Sweeten v. United States Department of Agriculture, Forest Service*, 684 F.2d 679, 682 (10th Cir.1982) (private landowners had to show affirmative misconduct by the government or its agents to establish estoppel against the government in an action to determine boundary of land granted in federal land patent); *Che–Li Shen v. United States*, 749 F.2d 1469, 1479 (10th Cir.1984) (Immigration and Naturalization Service not estopped from deporting alien); and *United States v. Louisiana–Pacific Corp.*, 682 F.Supp. 1122, 1139 (D.Colo.1987) (Environmental Protection Agency not estopped from bringing action against operator of plants for air pollution violations). In the above cases which require affirmative misconduct, there is an express stated additional consideration of public policy because a party is seeking to estop the government and such estoppel could be used to undermine the intention of the lawmakers and the ability to enforce the laws.

While this concern may be compelling when dealing with the taking of federal land, the influx of illegal aliens, or the pollution of our atmosphere, it should play only a minor role, if any, in the instant case. Without determining whether affirmative misconduct by the government or its agents is an element of equitable estoppel for the purposes of this case, this Court notes that in the case of *Tosco Corp. v. Hodel*, 611 F.Supp. 1130, 1205 (D.C.Colo. 1985), the Court stated as follows:

> ... [W]e do not believe that the Supreme Court, in suggesting 'affirmative misconduct' as an element of estoppel, intended that a government agent must engage in an intentional misrepresentation or concealment before his conduct could estop the government.... Therefore, we conclude that for the estoppel doctrine to be applied against the government, the conduct must be within the scope of the

474

agent's authority and must be an affirmative act which, on a balance of all the equities, amounts to 'unconscientious or inequitable' behavior.

It is undisputed that the IRS received the notice of a bar date, the Disclosure Statement, the Plan, and a ballot. It also received the original Proof of Claim that was filed on its behalf by creditors and then, prior to confirmation, amended the Proof of Claim. It did not file a ballot. It did not file an objection to confirmation. The IRS was sufficiently on notice at that time to point out if it did not agree with the statements in the Plan or Disclosure as to what the tax amounts were that were being disposed of and treated in the Plan, so that the Debtor, the Court, and all the other creditors could make a fair assessment. There was a substantial amount of interaction between the IRS and Debtor's representatives.

The fact that for all those months and for the next three years the IRS remained silent, while not amounting to an item of misconduct meaning some intentionally malicious item, it rises above the mere negligence or mere failure to inform. Under the test set out in *Tosco, supra,* the Court finds that the behavior of the IRS in the instant case would meet the standard of affirmative misconduct, if affirmative misconduct were a requirement for estoppel against the IRS pursuant to bankruptcy case law. This is not a case that proceeded without the IRS's knowledge and then all of a sudden, several years later, it turns out that there is a tax liability. The IRS knew at all stages what was going on in the case, that there was a Plan under consideration, and that the tax liability would seriously affect the rights and the payments to be made to all other creditors in the case.

Accordingly, the instant facts meet all of the requirements for estoppel set forth in *In Re La Difference Restaurant, supra,* p. 826. For these reasons, I find and conclude the IRS is estopped from pursuing further assessment or collection of any more taxes than was shown owing on the Debtor's returns as filed for the years 1986 and 1987.

D. *What is the Debtor's correct federal income tax liability for 1986 and 1987?*

Before the Court can determine the exact amount of federal income tax liability, preliminary conclusions and findings must be made on the following issues:

1. *What is the amount of the cancellation of indebtedness income resulting from the discharge of debt by reason of the confirmation of Debtor's Plan under Chapter 11, Title 11, U.S.C. in 1987?*

2. *What is the character of Debtor's loss from the worthlessness, in 1987, of his interest in the general partnership, Titsch & Associates, i.e., is the loss a capital loss or is the loss an ordinary loss?*

3. *What is the amount of net operating loss that the Debtor or the Debtor's estate may carryback to apply against the 1986 income tax liability?*

4. *What are the amounts of Debtor's charitable contributions and investment tax credit carryforwards available to Debtor in 1987?*

The parties have stipulated to the following:

1. The amount of the cancellation of indebtedness income resulting from the discharge of debt by reason of the confirmation of Debtor's Plan is $1,054,757.

2. Under the Court's finding that the § 1398 election is valid, the amount of Debtor's charitable contribution carryover deduction under Tax Code § 170 flowing out of the Estate on its termination on November 15, 1987 (the date of confirmation of the Plan) is $41,135.

The determination of the net operating loss carryback requires a determination of the character of Debtor's loss from the worthlessness in 1987 of his interest in the general partnership, Titsch & Associates. If the loss is a capital loss, none of such loss is available for carryback; if the loss is an ordinary loss, the entire loss of $2,092,090 is available for carryback in addition to other net operating losses incurred by the Debtor.

As a preliminary matter, the IRS has objected in open Court to this issue being heard by the Court as not being within the scope of the pleadings and not anticipated for trial by the parties. The Court concludes it has jurisdiction to determine this matter as a part of its jurisdiction under Bankruptcy Code § 505, and finds that the IRS was proceeding without objection for quite some time on this issue, and had discussed it with the Court as an issue to be determined in a pretrial meeting immediately before the evidence was entered. Furthermore, this issue was discussed at least since May, 1990, by Debtor's counsel and the IRS in great detail. Accordingly, if amendment of the pleadings is required, the Court deems the complaint to be amended to include the issue of the character of the loss in Titsch & Associates.

For the following reasons, the Court concludes the loss occurring from the worthlessness of the Titsch & Associates' partnership interest to be an ordinary loss occurring during the Debtor's estate's tax year ending November 15, 1987 which loss flowed out to Debtor on November 16, 1987, pursuant to Tax Code § 1398(i) such that the loss is available to the Debtor for carryback and carryforward to its full extent.

Debtor was a fifty percent (50%) partner in Titsch & Associates, a Colorado general partnership. Titsch & Associates filed for Chapter 11 bankruptcy in April 1986. On February 23, 1987, the Chapter 11 was converted to a Chapter 7 liquidation. It is at this point in time that the IRS and Debtor stipulated that Debtor's partnership interest in Titsch & Associates became worthless. It was also stipulated that the adjusted basis of Debtor's interest in the partnership was $2,092,090 at the date it became worthless.

A capital gain or loss occurs only upon the "sale or exchange" of a capital asset. Tax Code § 1222. Although a partnership interest is a capital asset in most taxpayers' hands, "a loss resulting from the worthlessness of the interest is not a capital loss, since the statutory requirements of the sale or exchange are not satisfied."

*Tejon Ranch Co. and Subsidiaries v. Comm.*, T.C.Memo 1985–207, 49 T.C.M. 1357, 1363 (1985). "The taxpayer is entitled to an ordinary loss deduction under § 165 if his investment in a partnership becomes worthless." *Tejon Ranch, supra.* See also, *Zeeman v. U.S.*, 275 F.Supp. 235 (S.D.N.Y.1967) (where the Court permitted a limited partner to claim an ordinary loss deduction under Tax Code § 165(c) at a time when the partnership in which he had invested became hopelessly insolvent); *Gannon v. Comm.*, 16 T.C. 1134 (1951). A specific statutory exception exists with regard to worthless securities pursuant to § 165(g) of the Tax Code which deems a sale or exchange to occur when a security such as a stock or bond becomes worthless. No such statutory exception exists to create a sale or exchange upon the worthlessness of a partnership interest.

It is undisputed that there was no actual distribution or transfer of property out of the Titsch & Associates partnership to Debtor, and thus Debtor did not receive anything when the interest became worthless. In addition, the Court finds that there was no deemed distribution pursuant to § 752 of the Tax Code to Debtor at the time the partnership interest became worthless since there was no discharge of liabilities that would have given rise to a decrease in Kreidle's share of Titsch & Associates' liabilities. As a general partner of Titsch & Associates, Kreidle remained personally liable on its debts. The IRS has not argued that there was any termination of the partnership at the time the interest became worthless. Even if there was a termination of the Partnership, the increases in Kreidle's individual liabilities by reason of Kreidle's assumption of his share of the partnership's liabilities would simultaneously offset the decrease in his share of the partnership's liabilities such that there was no net decrease in liabilities that could give rise to a deemed distribution of money. Tax Code § 752(a) and (b); IRS Regulation § 1.752–1T(j)(3).

Further, the IRS in one of its own Revenue Rulings permitted a limited partner in a partnership to claim an ordinary loss deduction under Tax Code § 165 in a situa-

tion where the partnership sustained a loss in its business operations, became insolvent and entered into bankruptcy proceedings, and dissolved. Rev.Rul. 70–355, 1970–2 C.B. 51. This Revenue Ruling has not been overruled or modified, even though a subsequent Revenue Ruling cited by the IRS, not involving a bankruptcy, Rev.Rul. 76–189 1976–1 C.B. 181, is similar in its facts and reached a contrary result without revoking or modifying the earlier one. The Court believes that the later Revenue Ruling is not as applicable to this case as was the earlier, unrevoked Revenue Ruling which involved a bankruptcy case.

Under the above-cited authority, the Court finds that there has been no sale or exchange, actual or deemed, and accordingly that the Debtor's estate is justified in claiming an ordinary loss deduction under Tax Code § 165(c) upon the worthlessness of the partnership interest in Titsch & Associates in the amount of $2,092,090 which is stipulated to be the Debtor's adjusted tax basis in his partnership. This loss flowed out to Debtor on November 16, 1987, the day after the estate terminated and increased his available net operating loss carrybacks.

The Debtor has prepared a calculation of taxes due by the Debtor for the years 1986 and 1987 based upon the Court's findings and conclusions. Based on the findings and conclusions contained herein, both parties have stipulated to the accuracy of the figures contained in the submission, and have agreed that the Debtor is entitled to a refund of $285,084 for 1986, plus interest through May 13, 1990 of $105,550 for a total refund to date of $394,634 for the year 1986, and a refund of $2,456 for 1987 plus interest through May 13, 1991 of $881, giving a total refund, including interest, of $3,337 for the year 1987. Debtor shall be entitled to additional interest after May 13, 1991, as provided by law.

E. *If there were substantial understatements of income for any year, was the IRS justified in assessing a penalty under Tax Code § 6661 (now repealed, but in effect in 1986)?*

The Court finds and concludes that there should not be any imposition of penalty for understatement under Tax Code § 6661 for two reasons. The conclusions and findings of the Court that there was a proper election under § 1398 of the Tax Code resulted in the tax return being correct as filed. Thus, there would be no penalty due. Even if there were not a proper § 1398 election there should not be any penalty imposed. Debtor adequately disclosed the relevant facts which would identify the potential controversy over the § 1398 election. Code § 6661(b)(2)(B)(ii) and S.Rept. 97–494 at 274 (1982). Debtor wrote on the top, righthand corner of the face of his 1986 Form 1040 for the first short year that the return was being "filed pursuant to I.R.C. § 1398(d)(2)", and (ii) attached a statement to his return clearly indicating that a Tax Code § 1398(d)(2) election was made together with a schedule showing the amount and type of income earned for both the first short year and for the second short year.

F. *Is Debtor Entitled to Attorneys' Fees?*

An additional matter of attorneys' fees for the prevailing party, the Debtor, was brought before the Court after the findings and conclusions were announced. The request for attorney fees was made under § 7430 of the Tax Code in the pretrial memorandum of Plaintiff, but was not made in the Complaint or in the Pretrial Statement which was stipulated by both parties as containing issues for trial. The pretrial memorandum is not conclusive or superseding of all the issues, but the issue of attorneys' fees has not been presented adequately at this time. This finding is not to preclude Debtor's counsel from presenting the issue at a subsequent time under Rule 11 or under § 7430 of the Tax Code.

THE COURT THEREFORE FINDS, CONCLUDES AND ORDERS:

A. The findings and conclusions stated herein are adopted as the findings and conclusions of the Court.

B. Judgment shall be entered in favor of the Plaintiff and against the Defendant for refunds of taxes paid by Plaintiff in the

amount of $285,084 for 1986 taxes plus interest through May 13, 1991 of $105,550 for a total due of $394,634 for the year 1986, and a refund of $2,456 for 1987 taxes plus interest through May 13, 1991 of $881, for a total due of $3,337 for the year 1987. Each of these amounts shall continue to carry interest at the statutory rate for refunds due taxpayers until the date of payment by Defendant.

C. The Clerk of this Court shall enter judgment on the docket as of this date as provided herein.